AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

2212 Irving Street, SE
Washington, DC

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I ____Scott Turner____ being duly sworn depose and say:

I am a(n) ____Special Agent, Federal Bureau of Investigation, (FBI)____ and have reason to believe
(Official Title)

that ☐ on the person of or ☒ on the property or premises known as (name, description and or location):

The residence of **2212 Irving Street, Southeast, Washington, D.C.** is described as a multistory red brick town home that is attached to the residence of 2210 Irving Street, S.E. The front door of the residence is light in color and has a white colored wood awning with dark colored roof shingles on top. The numbers "2212" appear just above the front door in black on white trim. The front door is covered by a screen door with bars. The front steps leading to the residence are green in color.

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)
**See attached Affidavit**

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
**See attached Affidavit**

concerning a violation of Title __18__ United States Code, Section(s) __924(c)__. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.   ☒ YES   ☐ NO

Nancy B. Jackson
Assistant United States Attorney
(202) 307-0029

Signature of Affiant
Scott Turner, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

at Washington, DC

_____
Date

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:

**2212 Irving Street, Southeast, Washington, D.C.**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____

QUALIFICATIONS OF THE AFFIANT

I, Scott Turner (hereinafter "affiant), being duly sworn, state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice assigned to the Washington Field Office, Washington, D.C. I have been so employed by the FBI as a Special Agent for approximately three years.

2. I am currently investigating a long-term gang related enterprise within the District of Columbia. I have monitored six court-authorized Title III wiretaps; I was the administrative agent on three of those wiretaps. During the course of my career with the FBI, I have participated in over 100 drug and/or firearms related arrests and have also executed over 100 search warrants which have led to the recovery of illegal narcotics, weapons and other evidence relating to violent criminals. Prior to these investigations I attended a sixteen week academy for the FBI which included training in arrests, search and seizures, consensual recorded conversations, Title III wiretaps, and closed captioned television (CCTV), among other things.

3. Based upon my training, experience, and participation in narcotics and racketeering investigations, I have personal knowledge that:

   a. Drug racketeers maintain books, records, receipts, notes, ledgers, airplane tickets, money orders, bank records, safety deposit box keys and other papers and items relating to the transportation, ordering, sale, and distribution of controlled

      substances. I know that the aforementioned items are generally maintained where the drug traffickers and racketeers can obtain ready access to them, in places such as their residences and/or the residences of girlfriends, relatives and/or associates.

b.   Individuals involved in narcotics trafficking often own, possess and/or use weapons as a means to facilitate their illegal drug activities. Such weapons are most often secreted in their residence, the residences of girlfriends or associates, or in the places of operation of the drug distribution activity, such as a weapons stash house, storage facilities contained on the curtilage of residences, or safe house.

c.   It is common for Drug racketeers to use secure locations to secrete contraband, proceeds of drugs, records of drug transactions, addresses and telephone numbers of their associates in the drug trafficking organization. These secure locations are often times the homes of members of the conspiracy or of family members or intimate friends. This is so the leaders will have a location totally unconnected with the drug records concerning the source of supply, debts due to the conspiracy, and monies owed to the drug suppliers. Leaders will often use close associates or family members as "straw purchasers" when high dollar value items are purchased with illegal drug proceeds.

d.   It is common for individuals who deal in the sale and distribution of illegal controlled substances, particularly heroin and cocaine, to secrete contraband related to those activities such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, pots, dishes and other containers for preparing heroin, cocaine and other controlled substances for distribution, at their

       residences, or the residences of family members, friends or associates, in their business locations, or in the places of operation of the drug distribution activity, such as storage facilities contained on the curtilage of residences, a stash house or safe house.

    e.    Drug racketeers often take photos of themselves, their associates, their property and illegal contraband. These photos are usually maintained in their place of residence, or the residences of family members, friend or associates, in their business locations, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

    f.    It is common for drug racketeers to utilize cellular telephones to facilitate communications, while concealing their true location, between themselves, their suppliers and their customers. In your affiant's training and experience it is common for drug racketeers to utilize these telephones because of their mobility, their relative security, and their belief that law enforcement has more difficulty intercepting the telephone calls. Drug racketeers often obtain pre-paid cellular phones that are subscribed to in false names. These phones are easily obtained from local cellular phone stores and no identification is required to purchase these phones. This provides drug racketeers with the ability to hide the true user of these telephones. One of the ways for law enforcement to obtain the true identity of the user of telephones is to seize the cellular phone from the individual or the individuals residence, and then search the internal electronic content of the telephone.

## II. LOCATION TO BE SEARCHED

4.      This affidavit is being submitted in support of an application which seeks authorization to search the following location:

5.      The residence of **2212 Irving Street, Southeast, Washington, D.C.** is described as a multistory red brick town home that is attached to the residence of 2210 Irving Street, S.E.  The front door of the residence is light in color and has a white colored wood awning with dark colored roof shingles on top.  The numbers "2212" appear just above the front door in black on white trim.  The front door is covered by a screen door with bars.  The front steps leading to the residence are green in color.

## III. THE INVESTIGATION

6.      This affidavit is based upon evidence and information developed through surveillance, cooperating witness information, and other relevant information gathered during an ongoing investigation.  This affidavit does not contain all of the information known to me regarding this investigation.  Your affiant has included in this affidavit facts which he believes are sufficient to support a probable cause finding for the issuance of the requested search warrant.  Your affiant seeks court authorization to search an address that is commonly referred to as a weapons "stash" location.  A weapons "stash" location is a house where illegal weapons and other contraband are stored.

7.      Your affiant believes 2212 Iriving Street, Southeast, Washington, D.C. to be the primary weapons "stash" location for JERMOND JAMES and PHILLLIP ROACHE.  ROACHE currently operates a drug distribution organization in the area of Southeast Washington, D.C. commonly referred to as Langston Lane.  JAMES is a member of that drug

organization. The Langston Lane area in which the organization operates is roughly defined as the area in Southeast, Washington D.C. bordered on the Northwest by Bruce Place, on the Northeast by Ainger Place and the Woodland Terrace apartment complex, on the Southeast by the 2400 block of Alabama Avenue (adjacent to the Seventh District Police Station), and on the Southwest by the Suitland Parkway. The residence at 2212 Irving Street, Southeast, Washington, D.C. is in close proximity that is approximately three blocks away from Langston Lane. In your affiants experience persons engaged in drug trafficking prefer to keep weapons in close proximity to their narcotics distribution area in order to defend against attacks of rival drug traffickers.

8. Cooperating Witness 1 (hereinafter referred to as CW1) has been cooperating with the FBI since July of 2008. CW1 has provided valuable information that has been corroborated by law enforcement. CW1 has never provided information that has proven to be false. CW1's information has not resulted in the seizure of any weapons or narcotics; however, CW1 provided information about an individual in the Langston Lane area that distributes narcotics and carries weapons. Subsequently, that person was arrested by the Metropolitan Police Department ("MPD") for weapons offenses. While that recent arrest on weapons offenses occurred unrelated to CW1's information, it corroborated CW1's information.

9. CW1 identified a photograph of PHIILLIP ROACHE as CAT, and identified a photograph of JERMOND JAMES as YOUNGIN. CW1 advised that PHILLIP ROACHE and others conduct illegal narcotic sales in the Langtson Lane area of Southeast, Washington, D.C. According to CW1, ROACHE and members of his organization illegally distribute drugs and that JERMOND JAMES is a "flunky" for ROACHE and his organization. CW1 advises that JAMES sometimes acts as an enforcer for the organization and that ROACHE calls JAMES when ROACHE needs violent acts done to protect the drug business or to protect

ROACHE himself. According to CW1, JAMES frequently carries weapons, to include a Mac 10 sub-machine gun, in his waistband and will have it pushed "way down low" in his pants. CW1 also advised that JAMES lives at **2212 Irving Street, Southeast, Washington, D.C.** and walks from that residence up to the Langston Lane area with these weapons.

10. A search of the MPD records in COLUMBO, Criminal Intelligence System, revealed that JERMOND JAMES was arrested for Simple Assault on March 16, 2007. The arrest location in COLUMBO is listed as 2212 Irving Street, Southeast, Washington, D.C.

11. A search of the MPD WALES system, Washington Area Law Enforcement System, revealed that JERMOND JAMES has a current District of Columbia vehicle operator's permit that expires on May 13, 2013. JAMES lists 2212 Irving Street, Southeast, Washington, D.C. as his address on that operator's permit.

12. Based on information from CW1, the Safe Streets Task Force conducted surveillance of 2212 Irving Street, Southeast, Washington, D.C. on July 15, 2008. At approximately 10:00 p.m., law enforcement observed JERMOND JAMES exiting a gold Mercury Sable bearing a red temporary tag and entering 2212 Irving Street, Southeast, Washington, D.C. A few minutes later JAMES was observed departiing 2212 Irving Street, Southeast, Washington, D.C. Agents further observed JAMES depart the residence and approach their stationary vehicle. JAMES walked past the vehicle while constantly observing the vehicle. JAMES then turned around and proceeded past the vehicle in the opposite direction. JAMES then ran into the residence of 2212 Irving Street, Southeast, Washington, D.C. One of the Agents described JAMES as having his hand "low" on his waistband the entire time. Those observations made by law enforcement are consistent with CW1's reporting that JAMES carries weapons "low" in his pants.

13. On or about July 26, 2008 CW1 witnessed ROACHE and JAMES together in the Langston Lane area. At that time, CW1 witnessed JAMES in possession of the MAC 10 weapon.

14. Additionally, the FBI recently arrested an individual on an outstanding warrant and interviewed the subject. The subject is familiar with criminal activity in the Langston Lane area and familiar with ROACHE and JAMES. This individual confessed to it's crimes and accepted responsibility for it's actions during the interview. This individual then provided information that has been corroborated by law enforcement. The individual also identified a photograph of PHILLIP ROACHE as ROACHE and/or CAT, and a photograph of JERMOND JAMES as JERMOND. This individual advised that JAMES frequently has a Mac gun in his waistband when in the Langston Lane area. Like CW1, the individual also advised that ROACHE sells narcotics in the Langston Lane area.

15. Based on your affiants training and experience, your affiant knows that Mac type weapons are difficult for drug traffickers to obtain and they provide extra security to narcotics organizations against the threat of rival organizations. An individual with a Mac type weapon can easily defend himself against attackers with weapons that have lower rates of fire. For these reasons, your affiant believes that ROACHE and JAMES will continue to maintain control of this weapon. Moreover, your affiant believes they will continue to stash the weapon at 2212 Iriving Street, SE, Washington, D.C., because of its close proximity to their narcotics distribution area, that is the Langston Lane area. Your affiant also believes that ROACHE and JAMES are unlikely to sell such a valuable weapon due to the difficulty in obtaining another one.

16. Based on the foregoing your affiant submits that there is probable cause to believe that secreted within the confines of **2212 Iriving Street, Washington, D.C.** is evidence

and instrumentalities of the crimes of conspiracy, illegal distribution of narcotics and unlawful possession of firearms in violation of Title 21 U.S.C. Sections 841 and 846 and Title 18 U.S.C. Section 924(c).

       I swear and subscribe to the information contained in the Affidavit:

          _____
          Scott Turner
          Special Agent
          Federal Bureau of Investigation
          Department of Justice

SWORN TO AND SUBSCRIBED before me this _____th day of August 2008.

_____
Alan Kay
United States District Court Magistrate Judge

## ATTACHMENT A

     (a)    Indicia of drug trafficking, including, but not limited to scales, cutting agents, cutting tools, drug paraphernalia for processing, packaging and/or distributing controlled substances.

     (b)    Books, computers, cellular telephones (including electronic contents), records, receipts, notes, ledgers, and other papers, relating to the transportation ordering, purchase and distribution of any controlled substances.

     (c)    Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers.

     (d)    Books, records, receipts, bank statements and money drafts, letters of credit, money orders and cashier's checks, receipts, passbooks, bank checks, and any other items evidencing the obtaining, secreting, transfer, and/or concealment of assets.

     (e)    Proceeds of narcotics violations including United States currency, pre-recorded U.S. Government funds, jewelry and financial instruments.

     (f)    Photographs, including photographs of co-conspirators, assets, weapons, and/or controlled substances, and other documents identifying associates and co-conspirators.

     (g)    Indicia of occupancy, residence and/or ownership of the premises, including but not limited to utility and telephone bills, canceled envelopes, and keys.

     (h)    Indicia of travel, including, but not limited to passports, visas, airline tickets, boarding passes, and airline receipts.

     (i)    Any and all devices used to store and count money, such as safes (combinations or lock type) and money counting machines.

     (j)    Any locked or closed containers believed to contain any of the above listed evidence.

     (k)    Any firearms, ammunition, weapons cleaning kits, documents reflecting the purchase or ownership of weapons, holsters or any other weapons related items.